## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

JASON JACKSON,

      Plaintiff,

      v.

MURPHY PAUL, in his official capacity,
TAFARI BEARD, in his individual capacity,
STEVEN NEVELS, in his individual capacity,
BATON ROUGE POLICE DEPARTMENT,
BRPD JOHN DOES 1-2, in their individual
capacities, CITY OF BATON ROUGE and
PARISH OF EAST BATON ROUGE.

      Defendants.

No.    3:23-cv-01591

Judge John W. deGravelles

Magistrate Judge Richard L. Bourgeois, Jr.

## AMENDED COMPLAINT WITH JURY DEMAND

## INTRODUCTION

1. Jason Jackson, a United States citizen, is one of at least 1,000 individuals subjected to a sexually humiliating strip search—in violation of the U.S. Constitution and Louisiana law—at the hands of Baton Rouge Police Department officers. Many of these violating searches occurred at the BPRD torture warehouse known to defendants as "the BRAVE Cave."

2. Since the existence of "the BRAVE Cave" became public in August 2023, and with the filing of several subsequent federal complaints, at least five Baton Rouge police officers directly or indirectly connected with the BRPD's Street Crimes Unit (formerly its "B.R.A.V.E Unit") have been charged with criminal wrongdoing, including Deputy Chief Troy Lawrence, Sr.

3. Despite an initial announcement from BRPD Chief Murphy Paul that the facility would be reopened with better lighting and a new interrogation room after a closure of several days, the torture warehouse has now been permanently shuttered.

4. The FBI released a statement that it was investigating, although, to date, none of the plaintiffs, or their attorneys, have been contacted, leaving civil rights lawsuits like this one the leading avenue for seeking accountability.

5. The violations of Mr. Jackson's constitutional rights cannot be attributed solely to a few rogue officers. Rather, it is essential to understand the way it was the logical and inevitable result of three interrelated and unconstitutional municipal policies: (1) BRPD's unconstitutional strip-search policy; (2) BRPD's policy of operating a torture warehouse known as "the BRAVE Cave," and (3) Chief Murphy Paul's refusal to meaningfully train, discipline, or supervise a "specialized unit," dubbed the BRPD Street Crimes Unit, which is now known to have violated the rights of hundreds if not thousands of citizens.

6. On November 13, 2023, Mr. Jason Jackson filed his original complaint in the Middle District of Louisiana.

7. On or about November 22, 2023, counsel for Mr. Jackson personally served defendant Steven Nevels with a copy of the Original complaint.

8. Later on or about November 27, 2023, Mr. Jason Jackson was indicted by the United States government for conspiracy to sell drugs.

**PARTIES**

9. Plaintiff Jason Jackson is an adult citizen of the United States and is domiciled in East Baton Rouge Parish, Louisiana.

10. Defendants herein are:

a. **MURPHY PAUL**, an adult resident of Louisiana, is sued in his official capacity. At all relevant times he was and is the Chief of the Baton Rouge Police Department. BRPD CHIEF MURPHY PAUL is the final policymaker for the municipal defendants as it pertains to official policy governing searches, seizures, training, discipline, use of force, and First Amendment policy for the Baton Rouge Police Department.

b. **TAFARI BEARD**, an adult resident of Louisiana and an officer in the (recently disbanded) BRPD Street Crimes Unit.

c. **STEVEN NEVELS,** an adult resident of Louisiana and an officer in the (recently disbanded) BRPD Street Crimes Unit.

d. **BRPD JOHN DOES 1-2**, adult residents of Louisiana and officers employed by the Baton Rouge Police Department. They are believed to be members of the Street Crimes Unit.

e. **CITY OF BATON ROUGE** is a governmental political subdivision.

f. **PARISH OF EAST BATON ROUGE** is a governmental political subdivision.

g. **BATON ROUGE POLICE DEPARTMENT** is the employer of all of these officer Defendants, along with CITY OF BATON ROUGE and PARISH OF EAST BATON ROUGE.

## JURISDICTION AND VENUE

3

**11.** This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights as secured by the United States Constitution, as well as the deprivation of rights under Louisiana law.

**12.** This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C. § 1391(b), because the defendants reside in this judicial district and the events giving rise to the claims asserted herein occurred in this judicial district. The holdings articulated by the Supreme Court of the United States regarding Rule 8(a)(2) of the Federal Rules of Civil Procedure are clear that all that is required for pleadings is "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."[1] The Supreme Court goes on in the *Iqbal* decision to state that:

> "A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the **reasonable inference** that the defendant is liable for the misconduct alleged."[2]

Further, **a court must accept all well-pleaded  facts as true and must draw all reasonable inferences in favor of the plaintiff."**[3]  Moreover, in *Caudill v. Farmland Industries,* the court defines what *reasonable inferences* are, stating: "inferences which may be drawn from the **evidence** *without resort to speculation.*"[4] However, evidence is typically not gained until the discovery phase of the litigation. Furthermore, federal courts have articulated that **courts may not apply a "heightened pleading standard"—more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)—in civil rights cases alleging**

---

[1] *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
[2] *Iqbal* 556 U.S. at 678.
[3] *Lormand v. U. S Unwired, Inc.*, 565 F. 3d 228, 232-33 (5th Cir.2009); Baker v. Putnal, 75 F, 3d 190, 196 (5th Cir.1996).
[4] *Caudill v. Farmland Industries, Inc.* 919 F.2d 83, 86 (11/15/90).

**municipal liability under 1983.**[5] Thus, it is undersigned counsel's contention that the instant *Complaint* should be liberally construed[6] and viewed in the light most favorable to the plaintiff.[7] Complainants maintain that the instant petition has enough factual matter–when taken as true–for the complaint to raise a reasonable expectation that **discovery** will reveal evidence of the Defendants' unconstitutional behavior.[8]

## STATEMENT OF FACTS

**A.    MR. JACKSON IS KIDNAPPED FOLLOWING THE CONCLUSION OF A TRAFFIC STOP AND BRPD COMPELS MR. JACKSON TO ENDURE A SEXUALLY HUMILIATING STRIP SEARCH IN THE "BRAVE CAVE"**

13. On or about May 10, 2023, around 9:30 p.m., Mr. Jason Jackson was pulled over in his car by two BRPD officers (Mr. Jackson believes this to be Officer Beard and Officer Nevels) on I-110 near the Memorial Stadium exit.

14. Mr. Jackson was not intoxicated, was not under the influence of any drugs, and did not violate any traffic laws.

15. The officers asked for permission to search Mr. Jackson's vehicle.

16. Mr. Jackson consented and the officers conducted a thorough and comprehensive search of his vehicle.

17. The officers found no evidence whatsoever of any criminal activity on Mr. Jackson's person or in his vehicle.

---

[5] *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

[6] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 68 Fed. R. Serv. 3d 661 (2007).

[7] *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (abrogated on other grounds by, Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)), Third Circuit : Havens v. Mobex Network Services, LLC, 820 F.3d 80 (3d Cir. 2016), cert. denied, 2016 WL 4944647 (U.S. 2016), Sixth Circuit: Binno v. American Bar Association, 826 F.3d 338, 333 Ed. Law Rep. 47 (6th Cir. 2016), *Eleventh Circuit: Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 77 Fed. R. Serv. 3d 1059 (11th Cir. 2010), *D.C. Circuit: Williams v. District of Columbia*, 771 F. Supp. 2d 29, 268 Ed. Law Rep. 866 (D.D.C. 2011).

[8] *Supra,* note 6.

**18.** After concluding their investigation into any alleged traffic violation (and any other suspected criminal activity), the officers did not release Mr. Jackson.

**19.** Instead, they shackled both his hands and feet and transported him to the "BRAVE Cave." Officer Nevels remained behind with Mr. Jackson's vehicle while Officer Beard transported Mr. Jackson.

**20.** At the time Mr. Jackson was transported to "the BRAVE Cave" shackled, officers lacked probable cause to believe that Mr. Jackson had committed a crime or was concealing a weapon or contraband.

**21.** At the time Mr. Jackson was transported to "the BRAVE Cave" shackled and handcuffed, officers lacked reasonable suspicion to believe that Mr. Jackson had committed a crime or was concealing a weapon or contraband.

**22.** "The BRAVE Cave" is an unmarked BRPD facility depicted below that was closed in September 2023 shortly after reports of torture committed by members of the Street Crimes Unit became public. It is not a jail or detention facility and no correctional staff work at "the BRAVE Cave." Rather, it is a warehouse, in operation for decades,[9] that the Street Crimes Unit has adopted as their home base. A place where BRPD officers take suspects to interrogate them, gather intelligence, and attempt to "flip" them to begin cooperating with BRPD.

---

[9] *See* August 2023 comments from BRPD Deputy Chief Myron Daniels at "BRAVE Cave" press conference at https://news.yahoo.com/baton-rouge-police-discuss-investigation-215526441.html.



23. Once inside the torture warehouse, the JOHN DOE 1 joined TAFARI BEARD and JOHN DOE 2 in violating Mr. Jackson's constitutional rights.

24. Mr. Jackson was increasingly scared when he was handcuffed to a bar, handcuffed at the ankles, then forced to strip naked.

25. Mr. Jackson became aware of the presence of a canine/police dog inside the warehouse. Mr. Jackson became even more fearful when an officer told him, "if you try to run I'll let [the dog] tear you up."

26. The officers then began their unconstitutional strip and cavity search, starting with physically manipulating Mr. Jackson's testicles.

27. Mr. Jackson was then ordered to bend over so that his rectum could be inspected.

28. Mr. Jackson was scared and humiliated and began to cry.

29. After it became clear that Mr. Jackson was not concealing any weapon or contraband, the officers apologized to him. Specifically, BEARD stated: "Man, I'm sorry."

30. JOHN DOE 2 then transported Mr. Jackson, still in handcuffs, back to his car.

31. Mr. Jackson was released without a ticket.

**"STOP AND STRIP"**

**B1.    BRPD'S WRITTEN POLICY OF ILLEGAL STRIP SEARCHES**

32. When officer defendants conducted their illegal search of Mr. Jackson's testicles and rectum, they were acting pursuant to formal BRPD policy.

33. BRPD Policy General Order No. 281 states in pertinent part:

*III. Strip Search*

> *A. Arrestees will not be subjected to strip searches unless the officer has articulate, reasonable suspicion that this particular arrestee may have weapons or contraband on his person. **Reasonable suspicion** will be based on the following factors:*
>
> *1. The nature of the offense charged;*
> *2. The arrestee's appearance and conduct;*
> *3. The circumstances of the arrest.*
> *4. The arrestee's prior record. . . .*
>
> . . . . .
>
> *C. Strip searches may be conducted on non-arrestees based on individualized articulable reasonable suspicion to frisk . . . .*
>
> *1. Reasonable suspicion . . . will be based on the same factors listed in III A.*

34. The U.S. Supreme Court has made it unambiguously clear that law enforcement officers may conduct only a "frisk," as defined in *Minnesota v. Dickerson*, 508 U.S. 366 (1993), when officers have only reasonable suspicion of criminal wrongdoing.

35. The written BRPD policy, in place since at least 2016, violates the legal standard announced in *Minnesota v. Dickerson* for searches by police officers.

**BATON ROUGE POLICE DEPARTMENT**

| General Order No.281 | Effective Date 11-01-1994 | Revised Date 05-19-2016 |
|---|---|---|

| Subject: | Search of Persons | Reviewed 5/19/16 |
|---|---|---|

**III.  Strip Search**

A.  Arrestees will not be subjected to strip searches unless the officer has articulate, reasonable suspicion that this particular arrestee may have weapons or contraband on his person. Reasonable suspicion will be based on the following factors:

1.  The nature of the offense charged.
2.  The arrestee's appearance and conduct.
3.  The circumstances of the arrest.
4.  The arrestee's prior record.

B.  Strip searches will be conducted under the following conditions:

1.  Strip searches of arrestees will only be conducted in either a fully enclosed room that is not accessible to the public or in a fully enclosed and secure portion of a Departmental facility or other custodial facility (e.g. Parish Prison, LSU Police Department, and Scotlandville Substation).
2.  Only the minimum number of individuals necessary to conduct the search will be present.
3.  Only officers of the same sex as the arrestee will conduct the search. The arrestee will not be touched by any officer unless it is necessary to counter resistance.

C.  Strip searches may be conducted on non-arrestees based on individualized articuable reasonable suspicion to frisk, probable cause to search, consent, or a court order.

1.  Reasonable suspicion and probable cause will be based upon the same factors listed in III A.
2.  The search must be conducted in a fully enclosed room that is not accessible to the public.
3.  Only the minimum number of officers necessary to conduct the search will be present. No other persons will be present during the search.
4.  If such a location is not immediately available, the suspect may be brought to the closest departmental facility that meets the criteria set forth above.
5.  The suspect will be detained no longer than is absolutely necessary to conduct the search.
6.  Only officers of the same sex as the subject of the search will conduct the search.

**B2.   BRPD'S LONG STANDING PRACTICE OR CUSTOM OF ILLEGAL STRIP SEARCHES**

36. BRPD's Street Crimes Unit regularly subjects all those brought to "the BRAVE Cave" to strip searches, including non-arrestees merely suspected of criminal wrongdoing.

37. BRPD Street Crimes Unit has conducted strip searches on an innumerable number of individuals whose detention was based solely on reasonable suspicion of wrongdoing (or less). These individuals, like Mr. Jackson, were released without formal arrest.

38. Illegal strip searches were not limited to "the BRAVE Cave": BRPD officers customarily

9

conduct strip searches on Baton Rouge residents even in public places.

39. These illegal searches have been the subject of several lawsuits with allegations spanning several years.[10]

### B3. BRPD'S RATIFICATION OF ILLEGAL STRIP-SEARCHES BY THE FINAL POLICYMAKER

40. In 2021, BRPD officers' use of strip searches became a national news story when video of BRPD officers' (including Troy Lawrence, Jr.) strip searching Clarence Green and his juvenile brother was broadcast on *CBS Evening News*.

41. In a May 2021 press conference, Chief Murphy Paul and Deputy Chief Myron Daniels defended the officers' strip searches at a public conference.

42. Chief Murphy Paul personally cleared the officers of any wrongdoing related to the illegal strip searches depicted on the video.

43. Instead of holding the officers accountable, the City of Baton Rouge instead sought to hold in contempt the attorney, Prof. Thomas Frampton, who publicized the misconduct. However, on January 7, 2022, the court granted a preliminary injunction, finding "overwhelming evidence" that the City had acted in "bad faith and in retaliation" in its attempts to jail Professor Frampton.

44. This sent a clear message to BRPD officers: if you engage in illegal strip-searches you will *not* be punished. Instead, BRPD will seek to punish those who publicized your misconduct.

45. Chief Murphy Paul ensured that BRPD officers conducted strip searches consistent with General Order No. 281's instructions that strip searches could be based solely on an officer's suspicion of wrongdoing.

---

[10] Lawsuits spanning back from at least 2021, demonstrate the knowledge of City Baton Rouge, Parish of Baton Rouge, and Chief Paul of BRPD's unconstitutional Strip Search Policy. See *Green et al v. Camallo et al.*

46. Chief Murphy Paul has since publicly admitted that the policy was unconstitutional and should not have been in place.

## C.    THE BRAVE CAVE: BRPD'S OFFICIAL BLACK SITE

47. The Street Crime Unit's use of a now-shuttered Black Site for its headquarters occurred with the express knowledge of BRPD's finally policy maker Chief Murphy Paul.

48. Indeed, even after the horrors of "the Brave CAVE" became known to the public, Chief Paul announced his intention to promptly reopen the facility after "upgrades" were made.

49. In late August 2023, Chief Paul assured the public that he was confident there was no pattern of constitutional violations occurring inside "the Brave CAVE" because a network of video cameras ostensibly recorded what occurred throughout the facility.

50. At the time that he made those statements, Chief Paul and BRPD attorney Deelee Morris were aware that the cameras did not capture what occurred throughout the facility and that significant amounts of footage was "missing."

51. Also in late August 2023, Deputy Chief Myron Daniels stated that the warehouse had been in use by BRPD for at least two decades.

52. Also, Chief Paul–via public comments– stated that he had only become aware of credible allegations of serious criminal wrongdoing within "the Brave Cave" around August 2023.

53. In fact, Chief Paul was personally aware of credible allegations of serious criminal wrongdoing within "the Brave Cave" at least as early as January 2023.

54. Nevertheless, Chief Paul resisted efforts to close the torture warehouse until overwhelming public outrage, including the Mayor's insistence, compelled him to do so in September 2023.

## D.    "THE AGGRESSIVE SIDE OF US" – THE BRAVE UNIT

55.  The fact that Mr. Jackson's constitutional rights were violated by a team of officers with BRPD's Street Crimes Unit—many of who are now facing criminal charges—is no surprise to anyone who has been following the turmoil caused by BRPD officers for the last few years.

56. Describing the Street Crimes Unit during a 2019 interview, now-indicted Deputy Chief Troy Lawrence, Sr. called the unit: "the aggressive side of us," referring to BRPD.

57. According to Chief Paul, now-arrested Deputy Chief Troy Lawrence, Sr. personally intervened to ensure that his now-arrested son, Troy Lawrence, Jr., was transferred to the Street Crimes Unit. But Troy Lawrence, Jr. was ostensibly part of a special program for high-risk officers with a documented history of violence and misconduct that Chief Paul was personally involved in overseeing; indeed, he was the *only* BRPD officer who was part of this program in 2023. Chief Paul knew this and approved of the transfer of Troy Lawrence, Jr. to the Street Crimes Unit anyway.[11]

58. The transfer—in lieu of meaningful reprimand—of violent and lawless officers like Troy Lawrence Jr. is just one example of the way BRPD leadership, and the Chief in particular, fostered an "anything goes" attitude with the Street Crimes Unit. Indeed, Chief Paul's deliberate indifference to repeated Fourth Amendment violations by members of the Street Crimes Unit.

## CAUSES OF ACTION

### COUNT I
### Violation of 42 U.S.C. § 1983: Unreasonable Seizure (Fourth Amendment)

59. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

---

[11] See, https://www.wafb.com/2023/04/21/brpd-officer-son-deputy-chief-has-history-complaints/ news segment published by WAFB on April 20, 2023.

60. As more fully described above, Defendants JOHN DOES 1-2, TAFARI BEARD, and STEVEN NEVELS deprived Mr. Jackson of his right to be free from unreasonable seizures when they unlawfully stopped him and/or unlawfully prolonged his initial seizure beyond the time necessary to investigate any purported traffic violation.

61. The decision to take Mr. Jackson to "the BRAVE Cave" and to continue holding him there for approximately two hours prolonged the unlawful seizure and was additionally unreasonable.

62. As a direct and proximate result of this deprivation of his constitutional right to be free from unreasonable searches, Plaintiff suffered injuries, both physical and emotional.

## COUNT II
### 42 U.S.C. § 1983: Unreasonable Search (Fourth Amendment)

63. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

64. As more fully described above, Defendants JOHN DOES 1-2 and TAFARI BEARD unreasonably searched Mr. Jackson when they shackled him and then performed an illegal strip search and visual body cavity search of Plaintiff.

65. As a direct and proximate result of this deprivation of his constitutional right to be free from unreasonable searches, Plaintiff suffered injuries, both physical and emotional.

## COUNT III
### 42 U.S.C. § 1983: Illegal Arrest (Fourth Amendments)

66. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

13

67. The actions by Defendants in illegally arresting and detaining Plaintiff without reasonable suspicion or probable cause violated the Plaintiff's Fourth Amendment rights to be free from an illegal arrest, pursuant to 42 U.S.C. § 1983.

68. The actions by BRPD officers to shackle, transport, and hold Plaintiff for approximately two hours without probable cause was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly established constitutional rights.

69. The actions of the Defendants were the direct and proximate cause of the violations of Plaintiffs' Fourth and Fourteenth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, and loss of liberty.

**COUNT IV**
**42 U.S.C. § 1983: Failure to Intervene**

70. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

71. "[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (citations omitted). "[A]n officer may be liable under § 1983 under [this] theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.' " *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted).

72. The individual defendants, Officer Beard, Officer Nevels and John Does 1-2, each observed their fellow officers violating Plaintiffs' constitutional rights, had a reasonable opportunity to intervene, and chose not to act.

14

**73.** The actions and inactions of the Defendants were the direct and proximate cause of the violations of Plaintiffs' Fourth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, and loss of liberty.

### COUNTS V and VI
### *Monell* Liability for Counts I and II

**74.** Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein against BRPD and all municipal defendants.

**75.** A Monell claim against a municipality can be established in at least eight different theories: (1) An express policy; (2) A violation by the final policymaker; (3) Improper hiring practices; (4) Improper retention practices; (5) Improper supervision/discipline; (6) Deficient training; (7) Pattern of misconduct; or (8) Ratification by final policymaker.

**76.** A government entity and responsible officials can be held liable for the retention of officers who cause constitutional violations when a plaintiff can demonstrate "deliberate indifference" to the "known or obvious consequence[s]" of such retention decisions. See Gomez v. Galman, 18 F. 4th 769, 778 (5th Cir. 2021), citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997).

**77.** Deliberate indifference exists "where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to [retain] would be the deprivation of a third party's constitutional rights." Gomez, supra, citing Gros v. City of Grand Prairie, 209 F.3d 431, 433-34 (5th Cir. 2000) (citing Snyder v. Trepagnier, 142 F.3d 791, 797 (5th Cir. 1998)).

**78.** Here, Plaintiffs bring a Monell claim under theories 1, 4, 5, 6, 7 and 8:

    **1.** The express policy being the unconstitutional BRPD search policy;

**4.** Improper retention practices (the choice by BRPD to retain officers like Tafari Beard and others despite repeated misconduct and violence);

**5.** Improper supervision/discipline (the complete breakdown of accountability at BRPD);

**6.** Deficient training (the failure to meaningfully train officers on constitutional search practices and policing);

**7.** Pattern of misconduct (the hundreds or thousands of Baton Rouge citizens abused on the streets and at the law enforcement black sites in a manner similar to Plaintiff); and

**8.** Chief Paul as the final policy maker ratified the actions of his officers by failing to amend BRPD's unconstitutional strip search policy and by failing to train or supervise officers who the department knew violated citizens constitutional rights.

79. As to "1" the Plaintiff further alleges that BRPD maintains and implements formal written policies authorizing illegal strip-searches predicated on "reasonable suspicion" that caused the constitutional violations alleged in this complaint.

80. As to "4" through "8" Plaintiffs further allege that there is a pattern, practice, custom, and informal policy of false arrests, unlawful seizures, excessive force and unconstitutional searches; and that this widespread recurring practice is so prevalent and settled that it constitutes formal policy; and that adherence to that practice caused the constitutional violations at issue in this complaint. Some examples being:

I. *Percle v. City of Baton Rouge et al.,* where, following a trial by jury, on March 10, 2016, the jury rendered a verdict in favor of the plaintiff for an officers' use of excessive force, in violation of the Fourth Amendment; the jury further found that **BRPD officer Jason Acre was liable for conducting a strip search of Percle** in violation of the Fourth Amendment to the United States Constitution; *and* found **that a moving force behind the unconstitutional strip search of Percle was a custom or policy of defendant the City of Baton Rouge, of which the City of Baton Rouge knew or should have known and was deliberately indifferent.** The jury further found that defendants Moruzzi and Acre caused Percle damages

in the amount of $25,000.00. Moreover, the jury found that the City of Baton Rouge was vicariously liable as a matter of law for the Louisiana state law torts.

Two months after this jury award, as illustrated above, on or about May 19, 2016, BRPD revised its Strip Search Policy. Despite the appearance of changing the policy, BRPD actually codified its already long-standing custom of unconstitutional strip searches. Given the 2016 jury award and 1993 case law in *Minnesota v. Dickerson*, The City of Baton Rouge/ Parish of East Baton Rouge and the Baton Rouge Police Department were on notice since at least 2016 of its custom and policy of unconstitutional strip searches. This continuation of their custom and policy of unconstitutional strip searches represent callous indifference on the part of the City and the Department.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BRETT PERCLE** | * | **CIVIL ACTION NO.: 14-449-SDD-RLB** |
| | * | |
| **VERSUS** | * | |
| | * | |
| **THE CITY OF BATON ROUGE, ET AL.** | * | |
| | * | |

---

### JUDGMENT

This matter came before the Court for a trial by jury beginning March 7, 2016. On March 10, 2016, the jury rendered its verdict finding defendant Robert Moruzzi liable for using excessive force against plaintiff, Brett Percle, in violation of the Fourth Amendment to the United States Constitution; finding Moruzzi liable for committing an assault and battery against Percle, as defined by Louisiana law; finding defendant Jason Acree liable for conducting a strip search of Percle in violation of the Fourth Amendment to the United States Constitution; and finding that a moving force behind Acree's strip search of Percle was a custom or policy of defendant the City of Baton Rouge, of which the City of Baton Rouge knew or should have known and was deliberately indifferent.

The jury further found that defendants Moruzzi and Acree caused Percle damages in the amount of $25,000.00.

The City of Baton Rouge is further vicariously liable as a matter of law for the Louisiana state law torts committed by Moruzzi, as found by the jury.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Judgment is rendered in favor of plaintiff, Brett Percle, and against defendants, The City of Baton Rouge, Jason Acree, and Robert Moruzzi, jointly, severally, and in solido, in the principal amount of

1

II.   *Green et al v. Camallo et al*, whereby the Plaintiffs  alleges fourth amendment violations by subjecting them to unreasonable seizure, illegal search of the couples residence, and an illegal search of Mr. Green's persons.

III.  *Mealy et al v. City of Baton Rouge et al*, whereby the Plaintiffs allege fourth amendment violations for unreasonable search and seizure which included several illegal strip and body cavity searches.

IV.   *Hardnett v. City of Baton Rouge, et al*, whereby the Plaintiff alleges fourth amendment violations by Baton Rouge Police Department for having maintained a policy and/ or practice of strip-searching individuals taken into their custody, without probable cause and without individualized reasonable suspicion that the individuals were secreting weapons or drugs.

V.    *Tennart et al. vs. City of Baton Rouge et al.*, whereby the Plaintiff alleges fourth and fourteenth amendment violations by Baton Rouge Police Department for false detention, arrest, and imprisonment.[12]

81. Plaintiff further alleges that BEARD, NEVELS and JOHN DOES 1-2 were inadequately trained regarding Fourth Amendment seizures and searches; that this inadequate training

---

[12] *Tennart et al. vs. City of Baton Rouge et al,* 3:17-cv-00179. Section 62 of the Plaintiff's original complaint also cites multiple lawsuits against the Baton Rouge Police department whereby BRPD was placed on notice of their policy, practice and custom of excessive uses of force and illegal searches. Those cases "included: (a) a 2007 arrest on a complaint of "loud music" with pepper spray and force that caused the rupture of the arrestee's bladder; (b) a 2008 arrest for smoking marijuana that fractured the skull of the arrestee, causing internal bleeding and permanent brain damage; (c) a 2011 incident in which an officer instructed a man, who advised the officer he was intoxicated, to move a vehicle away from the scene of the arrest; when the drunk driver crashed the car, the officer shot him to death and shot a bystander in the arm; (d) a 2014 incident in which BRPD officers strip-searched a visitor to a home which was being searched by the officers, then kicked the visitor with such force that his head slammed into the floor, knocking several teeth out of his mouth; (e) a 2015 incident in which two members of the news media were handcuffed, and one arrested, for taking pictures of an arrest; (f) a 2016 incident in which a sixteen-year-old was held down by multiple officers while one officer repeatedly punched him in the head; and (g) the shooting death of Alton Sterling in July 2016."

caused Plaintiff's constitutional injuries; and that BRPD and the City-Parish were deliberately indifferent to the constitutional rights injured.

82. Plaintiff further alleges that BEARD, NEVELS and JOHN DOES 1-2 were inadequately supervised; that this inadequate supervision caused Plaintiff's constitutional injuries; and that BRPD and the City-Parish were deliberately indifferent to the constitutional rights injured.

83. Plaintiff further alleges that BEARD, NEVEL and JOHN DOES 1-2 were inadequately disciplined; that this inadequate discipline caused Plaintiff's constitutional injuries; and that BRPD and the City-Parish were deliberately indifferent to the constitutional rights injured.

84. Plaintiff further alleges that the conduct of BEARD, NEVEL, and JOHN DOES 1-2 has been authorized, approved, and ratified by Chief Murphy Paul, who wields final policymaking authority for BRPD in the relevant fields.

### Counts VII, VIII, IX, X, and XI.
### State Law Claims: Battery, Assault, Intentional Infliction of Emotional Distress, False Imprisonment, Negligence.

85. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

86. As more fully described above, all defendants (including the City of Baton Rouge, East Baton Rouge Parish, BRPD, and Chief Murphy Paul) are responsible and liable to Mr. Jackson for the damages and injuries the Plaintiff has suffered as a result of Defendants' actions and/or inactions pursuant to the following:

A. Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it;"

B. Louisiana Code of Civil Procedure Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill;"

C. Louisiana Code of Civil Procedure Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody;" and

D. Louisiana Code of Civil Procedure Article 2320, which provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed…responsibility only attaches, when the masters or employers…might have prevented the act which caused the damage, and have not done it."

87. **Battery** - "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact[.][13]

In the instant case, officers with the Baton Rouge Police Department, in their official capacity as officers employed by BRPD, initiated contact with Mr. Jackson for possible traffic violations. He was then subsequently taken to the "BRAVE Cave" where he was subject to unconstitutional Strip and Body Cavity searches that included offensive contact by at least one BRPD officer who grabbed his genital area.

88. **Assault** - 'a threat of such a harmful or offensive contact."[14]

In the instant matter, an assault occurred when Mr. Jackson was detained by BRPD officers on the scene of the traffic stop, transported to the "BRAVE Cave", and forcibly subjected to an offensive, unwarranted, and invasive search of his person. A second assault occurred when a BRPD officer threatened to unleash a trained canine on Mr. Jackson if he ran. All the above listed instances were assaults as they placed Mr. Jackson in apprehension of receiving further injury at the hands of BRPD Officers or the BRPD dog.

---

[13] *Cage v. Wood*, 484 So.2d 850 (La.App. 1st Cir.1986); *Ross v. Sheriff of Lafourche Parish*, 479 So.2d 506 (La.App. 1st Cir.1985); *Vascocu v. Singletary*, 404 So.2d 301 (La.App. 3d Cir.1981); *Ashland Oil, Inc. v. Miller Oil Purchasing Co.*, 678 F.2d 1293 (5th Cir.1982); Restatement (Second) of Torts, American Law Institute § 13 (1965); F. Stone, Louisiana Civil Law Treatise, Tort Doctrine § 124—130 (1977); W. Prosser and W. Keeton, The Law of Torts, § 9 (5th ed. 1984); F. Harper and F. James, The Law of Torts, § 3.1—3.3 (2nd ed. 1986).

[14] *See* 512 So. 2d 389 (La. 1987).

89. **Intentional infliction of emotional distress-** "the Louisiana Supreme Court has outlined the three elements a plaintiff must establish in order to bring a claim for intentional infliction of emotional distress: 1) extreme and outrageous conduct by the defendant; 2) severe emotional distress suffered by the plaintiff; and 3) the intent by the defendant to inflict severe emotional distress or the knowledge that severe emotional distress was certain or substantially certain to result from the defendant's conduct."[15]

In the instant case, extreme and outrageous conduct was exhibited by BRPD officers which caused the intentional infliction of emotional distress upon the Plaintiff when Mr. Jackson was illegally arrested and subjected to unconstitutional Strip and Body Cavity searches and threatened with further harm by a trained canine.

90. **False imprisonment–** is the intentional confinement or detention of another, without his consent and **without proper legal authority.**

In the instant matter, Mr. Jackson was effectively falsely imprisoned, when he was forcibly transported to "the BRAVE Cave" and held there against his will for approximately two hours and subjected to unconstitutional Strip and Body Cavity searches without reasonable suspicion, probable cause, or an arrest warrant. This prolonged detention was without Mr. Jackson's consent, and despite BRPD policy to the contrary, lacked proper legal authority.

91. **Negligence–** In order to prevail in a negligence action, a plaintiff must prove the following five elements: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant's conduct failed to conform to the appropriate standard of care [breach of duty]; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the plaintiff was damaged.[16]

In the instant matter, the Defendant officers had a duty to conform their conduct to a specific standard of care, i.e., respect for Plaintiff's constitutional rights. Chief Paul, BRPD, and the

---

[15]*White v. Monsanto Co*., 585 So.2d 1205, (La. 1991); *Karl J. Pizzalotto, M.D., Ltd. v. Wilson*, 437 So.2d 859 (La.1983); *Coppage v. Gamble*, 324 So.2d 21 (La.App. 2d Cir.1975); F. Stone, Louisiana Civil Law Treatise, Tort Doctrine, § 125—127 (1977); F. Harper and F. James, The Law of Torts, § 3.3 (2nd ed. 1986). Cause of action for intentional infliction of emotional distress is viable in Louisiana, generally in accord with legal precepts set forth in Restatement (Second) of Torts. LSA-C.C. art. 2315.

[16] *Fruge v. ONOB, Inc*., Court of Appeal of Louisiana, Third Circuit, 32 So.3d 1115.

municipal defendants likewise had a duty to do so. Moreover, the substandard conduct of the defendants directly led to and was the cause-in-fact of the Plaintiff's various injuries. Therefore, the officer's breach of duty was the legal cause of the Plaintiff's injuries and the cause of his damages.

92. No reasonably prudent officer would have initiated or prolonged the illegal seizure of Mr. Jackson.

93. No reasonably prudent officer would initiate an unwarranted strip and body cavity search.

94. No reasonably prudent officer would initiate or carry out violations of citizens constitutional rights.

95. Moreover, defendants BEARD, NEVELS, and JOHN DOES 1-2 all had knowledge that severe emotional distress was substantially certain to result from their conduct.

96. As a result of the abovementioned torts, Mr. Jackson has suffered damages including: (1) deprivation of his right to be free from unreasonable searches and seizures; (2) mental and emotional injury; (3) pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

**Counts XII and XIII.**
**State Constitutional Violations**

97. The actions and/or inactions of all defendants are violations of the Louisiana Constitution of 1974 for the following reasons:

Louisiana Constitutional Article I §2 states: "No person shall be deprived of life, liberty, or property, except by due process of law."

In the instant matter, BRPD Officers violated the Plaintiff's rights when they shackled and transported him, deprived him of his liberties, without due process of law and without reasonable suspicion or probable cause to do so.

23

**98.** The actions and/or inactions of all defendants are violations of §5 of the Louisiana Constitution of 1974 for the following reasons:

Louisiana Constitutional Article I §5 states: "every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."

In the instant matter, BRPD Officers violated the Plaintiff's rights under Section 5 to be free from unreasonable searches, seizures and invasions of privacy when officer, acting in their official capacity as BRPD employees, illegally seized and transported Mr. Jackson to the "BRAVE Cave" and subjected him to unconstitutional Strip and Body Cavity searches. After the unconstitutional searches, seizure and invasion of privacy they released him from the facility without charging him with a crime.

### Counts XIV
### First Amendment Retaliation Claim

**99.** Under the First Amendment to the United States Constitution, a citizen has the right to be free from governmental action taken to retaliate against the citizen's exercise of First Amendment rights or to deter the citizen from exercising those rights in the future.[17]

**100.** Further, under the First Amendment, a citizen has the right to petition the government and to access the courts.

**101.** In the instant matter, the facts show that the defendant retaliated against the plaintiff, Mr. Jackson, for exercising his First Amendment right to petition the government, to wit:

---

[17] *Sloman v. Tadlock*, 21 F.3d 1462, 1469-70 (9th Cir. 1994).

A.  By filing internal affairs complaints[18] with BRPD and filing a Complaint in the Middle District of Louisiana, Mr. Jackson engaged in a constitutionally protected activity.[19]

B.  The defendant's actions against the plaintiff (i.e. investigating Mr. Jackson after he filed said complaints and subsequently providing information to the US Attorney's Office to indict Mr. Jackson) would chill a person of ordinary firmness from continuing to engage in the protected activity; and

C.  The plaintiff's protected activity (filing his Federal complaint) was a substantial or motivating factor in the defendant's conduct. Plaintiff maintains the investigation and indictment came only after he filed internal affair complaints, a public records request, and federal complaint against BRPD.

102.  Federal Courts have established that State action designed to retaliate against and chill political expression strikes at the heart of the First Amendment.[20] Therefore, actions that discourage or otherwise have an impermissible chilling effect are sufficient retaliatory acts to support a First Amendment retaliation claim.

103.  Herein, Mr. Jackson alleges that public officials, acting in their official capacity, took action with the intent to retaliate against him for exercising his First Amendment rights.

104.  Plaintiff further alleges that after he engaged in constitutionally protected activity, BRPD officials took actions which they knew or should have known would 'chill a person of ordinary firmness' from continuing to engage in the protected activity which in

---

[18] Plaintiff filed complaints with BRPD Internal Affairs against 2 named and 2 unnamed BRPD officers on or about October 13, 2023.

[19] *Marceaux v. Lafayette City-Parish Cons Govt*, 921 F.Supp.2d 605.

[20] *Thomas v. Carpenter*, 881 F.2d 828, 829-830 (9th Cir. 1989).

this instance was pursuing his federal complaint and internal affairs complaints.

105.    Further, Mr. Jackson alleges that future discovery in this matter will show that there was a nexus between the defendant's (BRPD) actions and an intent to chill his speech.

106.    Therefore, Plaintiff maintains that the defendant intended to interfere with the plaintiff's exercise of his First Amendment rights and that by being under federal indictment and facing criminal charges he is suffering various injuries as a result of BRPD's actions.

## JURY TRIAL DEMAND

107.    Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

108.    The Plaintiff respectfully requests:

   **A.** Compensatory damages as to all Defendants;
   **B.** Special Damages as to all Defendants;
   **C.** Punitive damages as to all Defendants sued in their individual capacity;
   **D.** Reasonable attorneys' fees and costs as to all Defendants; and
   **E.** Such other and further relief as may appear just and appropriate.

**WHEREFORE**, Plaintiff, Mr. Jackson does pray that after just proceedings are held a judgment is rendered in favor of Plaintiff and against all Defendants jointly, severally, and/or *in solido* and that said judgment is in excess of three million dollars ($3,000,000) including interest, delay damages, costs of suit, attorneys fees, general and specific damages, punitive and exemplary damages and any other damages as provided by law.

Respectfully submitted,

26

/s/ Ryan K. Thompson

**Ryan K. Thompson, LA Bar #38957**
**TRIAL ATTORNEY**
660 Richland Ave
Baton Rouge, LA 70806
T: (323)271-8032
E: RKTsocialjustice@gmail.com

/s/ Jessica F. Hawkins

**Jessica F. Hawkins, LA Bar #38263**
P.O. Box 5072
Baton Rouge, LA 70802
T: (915)217-9192
E: jessicahawkins0421@gmail.com

/s/ Shannon Batiste

**Shannon L. Battiste (#30198)**
12605 S. Harrells Ferry Road, Suite 5
Baton Rouge, La 70816
Telephone: (225) 726-5070
Facsimile: (844) 787-0048
**COUNSEL FOR JASON JACKSON**

27