**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JASON JACKSON** | * | **CIVIL ACTION NO. 23-1591** |
| | * | |
| **Plaintiff** | * | **JUDGE DEGRAVELLES** |
| | * | |
| **VERSUS** | * | **MAG. WILDER-DOOMES** |
| | * | |
| **MURPHY PAUL, ET AL** | * | **A JURY IS DEMANDED** |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

**NOW INTO COURT,** through undersigned counsel, come Defendants, Tafari Beard ("Officer Beard"), the City of Baton Rouge/Parish of East Baton Rouge ("City/Parish"), Murphy Paul in his official capacity ("Paul"), and Steven Nevels ("Nevels"), who respectfully move this Court dismiss all Plaintiff's claims pursuant to F.R.C.P. Rule 12(b) and *Heck v. Humphrey*,[1] because Plaintiff's guilty plea in his related criminal case includes sworn factual admissions establishing probable cause to carry out all actions alleged in his Complaint and a ruling in his favor in this matter would call into question his criminal conviction.

I.     **Procedural Background**

Plaintiff engaged in a criminal conspiracy to illegally traffic narcotics between at least 2021 and on or about June 14, 2023.[2] Plaintiff "used vehicles within the middle District of Louisiana to distribute cocaine on behalf of a co-conspirator, would use telephones to discuss, negotiate and arrange the sale and purchase of controlled substances, would use public and private places to arrange and complete narcotics-related transactions and would take actions to evade law

---

[1] 512 U.S. 477, 114 S.Ct. 2364 (1994).
[2] Exhibit A at 14 (Transcript of Plaintiff's Colloquy).

1

enforcement and protect the drug trafficking conspiracy, including taking in code, meeting in secret and hiding the drugs and proceeds from drug sales."[3] This included the encounter this matter is about, on May 10, 2023.[4]

Pursuant to the criminal investigation of Plaintiff's illegal conspiracy to transport and sell narcotics, Plaintiff's calls were intercepted by law enforcement.[5] The intercepted calls included Co-conspirator A's instructions that Plaintiff facilitate an illicit transaction, where he would act as the courier transporting money and cocaine between a customer and a Co-Conspirator B.[6] Surveillance units followed Plaintiff where "it was believed Plaintiff would deliver the cocaine to the customer."[7] While on his way to deliver the cocaine, Plaintiff was stopped by Baton Rouge Police Department, ("BRPD") officers.[8] Though officers were unable to locate the cocaine and the Plaintiff was released, Plaintiff later admitted in a recorded call that he was "lucky" and "had almost been caught[,]" which was later confirmed by Co-Conspirator A's recorded statement that Plaintiff had drugs on him the previous night.[9] The above facts were confirmed in sworn testimony by Plaintiff to this Court:

> **THE COURT:**  IS THAT WHAT HAPPENED AND WHAT YOU DID?
>
> **THE DEFENDANT:**  YES, SIR.[10]

As a result of these facts, Plaintiff pled guilty to Count 1 of the indictment brought against him:

Conspiracy to distribute and possess with intent to distribute controlled substances: first, that two or more persons, directly or indirectly, reached an agreement to

---

[3] *Id.*
[4] *Id.* at 14-15 (noting "specifically on May 10, 2023 . . . Defendant then")
[5] *Id.* at 14-15.
[6] *Id.* at 15.
[7] *Id.* at 15; *see also* R. Doc. 1 at ¶ 5.
[8] *Id.* at 15; *see also* R. Doc. 1 at ¶ 5.
[9] *Id.* at 15.
[10] *Id.* at 16.

distribute and to possess with intent to distribute cocaine, and to aid and abet the commission of that conspiracy. The elements of the crime of possession with intent to distribute controlled substances are: (a) that Someone knowingly possessed a controlled substance. (b) that the substance was, in fact, cocaine, and (c) that the person possessed the substance with the intent to distribute it. Meaning, that he possessed it with the intent to deliver or transfer possession of a controlled substance to another person with or without any financial interest in the transaction. The elements of the crime of distribution of controlled substances are: (a) that the person distributed controlled substances to another as defined above. (b) that the substances was in fact -- that the substance was, in fact, cocaine. (c) that the person knew that what he was distributing was a controlled substance, and (d) that the person acted intentionally, that is, with his conscious object to transfer the controlled substance to another person. Second, that you knew of the unlawful purpose of the agreement and, third, that you joined in the agreement willfully, that is, with the intent to further its unlawful Purpose.[11]

When this Court asked Plaintiff if he was guilty of each element outlined for Count 1, Plaintiff replied:

**THE DEFENDANT:   YES, SIR.** [12]

Plaintiff's counsel in his criminal matter further affirmed Plaintiff was aware of and understood what he plead guilty to.[13] This Court accepted Plaintiff's plea and adjudged him guilty and found there is independent basis for each essential element of conspiracy to distribute and intent to distribute controlled substances.[14]

Plaintiff initiated this civil matter on November 13, 2023, regarding the May 10 traffic stop and transport to the secure, private BRPD facility. Plaintiff brings this action against former BRPD Chief Murphy Paul, BRPD Officers Tafari Beard and Steven Nevels, two "John Doe" BRPD officers, the City/Parish, and the Baton Rouge Police Department.[15] Plaintiff alleges he was secured and transported to a secure, private BRPD facility without probable cause or reasonable

---

[11] *Id.* at 16-17.
[12] *Id.* at 17.
[13] *Id.* at 17.
[14] *Id.* at 17.
[15] R. Doc. 7 at 2-3, ¶ 10(a)-(g). Note, BRPD is not a juridical entity capable of being sued.

suspicion that Plaintiff had committed a crime or was concealing a weapon or contraband.[16] Plaintiff contends he was ordered to disrobe and manually searched for contraband.[17] Plaintiff finally alleges that Officer Beard apologized to him when they were unable to find the drugs Plaintiff would later testify he was transporting at the time he was stopped.[18]

Plaintiff alleges the officers unlawfully stopped him and/or unlawfully prolonged his initial seizure by transporting him to a private, secure facility for approximately two hours.[19] Plaintiff further alleges the search of his person to be illegal.[20] Plaintiff claims he was arrested without probable cause or reasonable suspicion.[21] Plaintiff asserts the BRPD officers are liable for failing to intervene and stop the search he claims was illegal.[22] Plaintiff also asserts a *Monell* claim attributed to the unlawful search and seizure claims (Counts I and II) against the City/Parish, Paul, and BRPD.[23] Plaintiff includes state law claims of battery, assault, "IIED", false imprisonment, and negligence (Counts VII-XI) along with Louisiana Constitutional violations (Counts XII and XIII) against all defendants.[24] Finally, Plaintiff asserts a First Amendment Retaliation Claim against "BRPD officials" in connection with Plaintiff's federal prosecution.[25]

## II.    Law and Argument

Police officers are entitled to the protections of qualified immunity for alleged violations of the rights of others while they carry out their duties protecting the public:

> Qualified immunity shields government officials performing discretionary functions from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated

---

[16] R. Doc. 7 at ¶ 18-19.
[17] *Id.* at ¶¶ 24-25.
[18] *Id.* at ¶ 27.
[19] *Id.* at ¶¶ 57-60.
[20] *Id.* at ¶¶ 61-63.
[21] *Id.* at ¶¶ 64-67.
[22] *Id.* at ¶¶ 68-71.
[23] *Id.* at ¶¶ 74-84.
[24] *Id*. at 20-24, ¶¶ 85-98.
[25] *Id*. at 24-26, ¶¶ 99-106.

> Determining whether an officer is entitled to qualified immunity requires a two-step inquiry. First, we ask whether the officer's alleged conduct has violated a federal right. Second, we ask whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct. Courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.[26]

As established below and by Plaintiff's own sworn testimony, the BRPD officers had ample probable cause to take every action Plaintiff alleges in his Complaint. However, should this Court find they did not, alternatively, the officers are entitled Qualified Immunity, because any holding of such is not clearly established and "[qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."[27] Indeed, the Supreme Court instructs a suit against an officer must still be dismissed even if the actions are driven by outright animus, so long as they are reasonable under an objective officer test.[28] This is because "the Fourth Amendment does not require law enforcement officers to be constitutional scholars."[29]

### A. The Officers had ample probable cause to stop Plaintiff (Count I).

The Officers had probable cause to stop Plaintiff's vehicle on the day in question, and so Plaintiff's claim of unreasonable seizure must fail. Alternatively, should this Court hold there was no probable cause despite the intercepted communications, confirmed as accurate by Plaintiff's sworn testimony before this Court, a reasonable officer could have believed there to be a sufficient basis for the stop and each named officer is entitled to the protections of qualified immunity. As a threshold matter, officers did not require a warrant to stop nor search Plaintiff's vehicle under the

---

[26] *Young v. City of Baton Rouge*, 2026 WL 540551 at *8 (M.D. La. 2026) (deGravelles, J.) (internal citations and quotations omitted); *see also Malley v. Briggs,* 475 U.S. 335 (U.S. 1986).
[27] *Id.* at *10 (citations omitted).
[28] *Mendenhall v. Riser,* 213 F.3d 226, 229 (5th Cir. 2000) (citing *Anderson v. Creighton,* 483 U.S. 635 (1982)).
[29] *United States v. Williams*, CR 2025 WL 3669887 at *12 (W.D. La. 2025), *report and recommendation adopted,* 2025 WL 3669886 (W.D. La. 2025).

automotive exception.[30]

Wiretaps informing law enforcement an individual is about to act as a drug courier provide an officer "a fair probability that illegal drugs would be found in [the courier's car]" even in the more stringent context of a criminal case, where the government must prove actual probable cause rather than the reasonable possibility of it.[31] Prior information of the pending drug trafficking, and suspects acting in conformity with the information, provides probable cause to stop and search a vehicle, even when this information is in the form of a confidential informant rather than the interception of communications.[32]

The Fifth Circuit's recent holding in *Bailey v. Ramos* controls the disposition of Plaintiff's claim for Unreasonable Seizure, as it held "because we conclude that Ramos could have reasonable, even if mistakenly, believed that he had probable cause to arrest Bailey for interference with public duty, he is entitled to qualified immunity as to the unlawful arrest claim . . . Because Ramos is entitled to qualified immunity for Bailey's unlawful arrest claim, he is entitled to qualified immunity for Bailey's unlawful seizure claim,".[33] As established below, BRPD officers had probable cause to arrest Plaintiff. Thus, at minimum, the officers are entitled to qualified immunity for the same.[34]

### B. The Officers had ample probable cause to search Plaintiff (Count II).

As established above, Plaintiff is precluded from challenging his transport to the secure and private BRPD facility because of *Heck* and there existed actual probable cause to arrest

---

[30] *U.S. v. Fields* 456 F.3d 519, 523 (5th Cir. 2006).
[31] *United States v. Ziga*, 2010 WL 3735729, *4 (W.D. La. 2010), *report and recommendation adopted,* 2010 WL 3747651 (W.D. La. Sept. 16, 2010); *see also United States v. Weinrich,* 586 F.2d 481 (5th Cir. 1978) (a search of several vessels was justified under the automobile exception and probably cause established primarily by the contents of a wire tap and suspects movements in conformity to the intercepted information).
[32] *See United States v. Powell*, 732 F.3d 361 (5th Cir. 2013).
[33] *Bailey*, 125 F.4th at 678-679.
[34] *Id.*

Plaintiff based on the intercepted communications. This Court should follow its previous ruling in *Young v. City of Baton Rouge,* where it concluded the officers are entitled to qualified immunity for a cavity search at this same facility.[35] This Court performed an extensive analysis of the national caselaw regarding such searches and held law enforcement is entitled to qualified immunity in nearly identical circumstances: (1) a defendant pulled over in a traffic stop; (2) probable cause for a drug related offense; (3) transportation to, and accompanying search at this facility.[36] The law has not changed in the last two months and the Court should hold the same here.

### C. The Officers had ample probable cause to transport Plaintiff (Count III).

As established above in Plaintiff's sworn testimony confessing to possession and trafficking contraband during the traffic stop in question.[37] Plaintiff also testified law enforcement was aware of this, via intercepted communications between he, co-conspirators, and their customer. Information "gleaned from [a] wiretap" along with traditional investigative observations, provides an officer with both reasonable suspicion and probable cause to believe a drug courier possesses the controlled substance at the time previously discussed in intercepted communications.[38] This is true regardless of whether each individual officer had actual knowledge of the contents of the intercepted communications, because an officer is entitled to rely on the collective knowledge of his colleagues.[39] Here the intercepted communications as admitted in the guilty plea revealed on the date in question that Plaintiff "retrieved the money from the customer's

---

[35] *Young v. City of Baton Rouge*, 2026 WL 540551 at *13 (M.D. La. 2026) (deGravlles, J.).

[36] *Id.* Though the Court expressed the possibility of a constitutional violation by a second such search without intervening circumstances, that possibility is not implicated here, as Plaintiff was released following his search. Law enforcement was not able to locate the contraband now known to be secreted in his vehicle at that time and he was not booked on that date. Therefore, any amendment to Plaintiff's Complaint would be futile.

[37] *See* Section I; *see also* Exhibit A.

[38] *United States v. Williams*, 2025 WL 3669887, at *8 (W.D. La. Nov. 24, 2025), *report and recommendation adopted,* 2025 WL 3669886 (W.D. La. Dec. 17, 2025) (citing *United States v. Estrada*, 459 F.3d 627, 631-632 (5th Cir. 2006))

[39] *Id.* (citing *United States v. Hernandez*, 477 F.3d 210, 215 n.13 (5th Cir. 2007) and *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007)).

business and retrieved the cocaine from co-conspirator 'B'."[40] Thus, probable cause to arrest and search Plaintiff existed. For this Court to hold there was no probable cause to arrest Plaintiff (though officers do not concede Plaintiff was involuntarily transported) would require it to call into question the factual admissions and guilty plea of the Plaintiff in his criminal case, currently awaiting the sentencing report as well as this Court's own decision finding independent support for the same.[41]

Courts within the Fifth Circuit apply *Heck* to bar civil actions under § 1983 for false arrest, as well as other claims, because they "challenge the existence of probable cause and, thus, by their essence are collateral attacks on a criminal judgment's validity."[42] This holds true if a conviction remains for any one of the initially charged offenses, as is the case here.[43] For these reasons, Plaintiff's constitutional challenge to his transportation must fail.

### D. The claim for failure to intervene must fail because there was no underlying violation (Count IV).

As established above, Plaintiff's substantive § 1983 claims in Counts I, II, and III fail as a matter of law. Either because this Court recognized the probable cause to take each action or because a reasonable officer could have objectively believed them to be legal. Therefore, this Court should dismiss Count IV, because there was no predicate Constitutional violation an objective officer would have recognized required intervention.[44]

---

[40] Exhibit A at 14-15.

[41] Plaintiff's allegations would constitute an arrest, requiring probable cause, as a legal matter under the criteria the Supreme Court established in *Dunaway v. New York*, 442 U.S. 200 (1979) because he was transported to a second location for custodial interrogation and search. However, Plaintiff's testimony and this Court's ruling in the related criminal case establishes there was probable cause.

[42] *Rouse v. Ard*, 2020 WL 96898 at *6 (M.D. La. Jan. 8, 2020) (deGravelles, J.) (citations omitted).

[43] *Id.* (citing *Wells v. Bonner*, 45 F.3d 90, 95 n.2 (5th Cir. 1995); *see also Thomas v. Gulotta*, 2018 WL 3352951 (M.D. La. July 9, 2018) (deGravelles, J.).

[44] *See Spoon v. Bayou Bridge Pipeline, LLC,* 682 F.Supp.3d 594, 627 (M.D. La. 2023) (Dick, J.) (applying *Buehler v. Dear,* 27 F.4th 969, 977 (5th Cir. 2022)) (Plaintiff's "bystander and municipal-liability fail for lack of an underlying constitutional violation.").

**E. Plaintiff's *Monell* claims fail as a matter of law (Counts V and VI).**

Without a predicate constitutional rights violation, there can be no *Monell* liability.[45] Plaintiff's guilty plea related to the drug trafficking arrest and charges invalidates his claims for unlawful search, seizure, arrest, and the secondary claims associated herein. "An 'official policy' for § 1983 purposes may be either a written policy or 'a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Lawson v. Dallas County*, 286 F.3d 257, 263 (*quoting Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984) (en banc).

To the extent Plaintiff's reference to "the express policy being the unconstitutional BRPD search policy"[46] refers to the limited portion of BRPD General Order No. 281, subsection III(C) made the substance of another court's Preliminary Injunction Ruling,[47] there is no connection to the claims or issues at hand. Namely, subsection III(C) pertains only to "non-arrestees," which Plaintiff was not and his guilty plea acknowledges same. Accordingly, Plaintiff cannot establish a *Monell* claim here based upon another court's limited ruling on BRPD General Order No. 281.

Taking into consideration the facts surrounding Plaintiff's guilty plea, the City/Parish has no policy, pattern, practice, or custom of unlawful behaviors by its peace officers during investigations of suspected drug trafficking.

**F. Plaintiff's State Law claims fail as a matter of law (Counts VII, VIII, IX, X, and XI).**

*Battery*

As established above, officers had probable cause to arrest Plaintiff during the traffic stop

---

[45] *Reitz v. Woods*, 85 F.4th 780, 795 (5th Cir. 2023).
[46] R. Doc. 7 at 15, ¶78(1).
[47] *Lee v. Lawrence*, et al.; No. 23-1229-SDD-SDJ; R. Doc. 96.

and to rule otherwise would call into question Plaintiff's guilty plea, as well as this Court's independent finding of fact. Therefore, Plaintiff's state law claims predicated on a contrary theory must fail. The Fifth Circuit's holding in *Francois v. City of New Roads* controls the disposition of Plaintiff's state law claims.[48] In both situations, plaintiffs allege state law assault and battery claims and so must show that the force used by law enforcement was excessive.[49] Plaintiff has failed to do so, rather "his argument is predicated on the belief that any force is excessive."[50] For this reason, Plaintiff's state law claim for battery should be dismissed.

*Assault*

For the reasons above, Plaintiff's claim for assault integrated with the claim for battery should be dismissed.

*Intentional Infliction of Emotional Distress*

This Court should dismiss Plaintiff's claim for Intentional Infliction of Emotional Distress for the same reason. Plaintiff's seizure, alleged arrest, and search were all supported by probable cause. Plaintiff's "arrest was neither extreme nor outrageous considering the Court's determination that it was supported by probable cause."[51]

*False Imprisonment*

Probable cause, or the reasonable belief in such, also bars Plaintiff's state law claim for false imprisonment. Plaintiff must establish two elements for false imprisonment: (1) a detention and; (2) the unlawfulness of the detention.[52] "Because [Plaintiff's] arrest and detention was

---

[48] 459 Fed. App'x 475.
[49] *Id.* at 479.
[50] *Id.*
[51] *Allemang v. Louisiana* 2021 WL 2383934, *4 (W.D. La. 2021).
[52] *See Martin v. Neustrom,* 967 So.2d 550 (La. App. 3 Cir. 10/03/2007).

supported by probable cause, his claim for false arrest fails."[53] "Plaintiff's arrest was made with probable cause and, thus, his arrest and subsequent detention were not unlawful and he is not entitled to damages for the same."[54]

*Negligence*

For all the reasons outlined above, Plaintiff's general negligence claim must fail as matter of law. Just as there was no duty to intervene without a predicate violation of Plaintiff's rights, there was no breach of a duty of care without some underlying tort. There is none. Here, the Officers were not "negligent in arresting Plaintiff because there was probable cause to arrest Plaintiff . . . . Therefore, no Defendant breached any duty to Plaintiff."[55] Thus, this Court should dismiss Plaintiff's state-law based claim of negligence as well as all other state causes of action.

*Article I § 2*

The Louisiana Supreme Court holds Louisiana's constitutional due process protection Article I § 2, unlike its equal protection clause, is identical in application to the Federal Due Process Clause of the Fourteenth Amendment.[56] Because there was no violation of Plaintiff's federal constitutional rights, his claim under the Louisiana Constitution necessarily fails.

*Article I § 5*

The Article 1 § 2 of the Louisiana Constitution and the Fourth Amendment of the U.S. Constitution prohibits unreasonable searches and seizures. Louisiana courts interpret them in accord with one another.[57] For the reasons above establishing no federal constitutional violation, Plaintiff's own sworn testimony, his guilty plea, factual admissions, and this Court's independent

---

[53] *Francois* 459 Fed. App'x at 479; *see also Allemang v. Louisiana* 2021 WL 2383934, *4 (W.D. La. 2021).
[54] *Tabora v. City of Kenner*, 650 S.2d 319, 323 (La. App. 5 Cir. 01/18/95).
[55] *Loupe v. O'Bannon,* 2018 WL 343850 at *9 (M.D. La. 2018).
[56] *Progressive Sec. Ins. Co. v. Foster*, 97-2985 (La. 4/23/98); 711 So.2d 675, 688.
[57] *See State v. Gibson*, 12-350 (La. App. 5 Cir. 10/30/12); 103 So.3d 641.

11

judgment require Plaintiff's claim under Article 1 § 5 be dismissed as a matter of law.

### G. Plaintiff has alleged no claim against the defendants for First Amendment Retaliation (Count XIV).

A Plaintiff asserting a claim for retaliation in the Fifth Circuit must prove both that government officials took an adverse against an individual in response to protected speech but also the common law elements of malicious prosecution.[58] Plaintiff's guilty plea to the underlying federal criminal charges renders his claim based on BRPD officers cooperating with the federal investigation of his crimes futile.

### H. The Court may take judicial notice of Plaintiff's related criminal case.

It is well established that a court may take judicial notice of related criminal matters when evaluating a civil rights complaint against law enforcement arising from their official duties.[59] Therefore, this Court should take notice of Plaintiff's sworn testimony before this Court and find Plaintiff's allegations in the civil Complaint are incompatible with his later representations to the Court admitting law enforcement intercepted his communications prior to his transportation of controlled substances and his stop and associated search. Furthermore, this may be done in the context of a Motion to Dismiss or Motion for Judgment on the Pleadings without converting the matter to Summary Judgment.[60]

### I. Duplicative claims against the City/Parish and former Chief Paul in his official capacity cannot simultaneously stand.

A claim against government officials in their "official capacity" is "treated as a suit against

---

[58] *Shipman v. Sowell*, 766 Fed. App'x. 20, 26 (5th Cir. 2019) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

[59] *See Harrison v. Louisiana,*, 2015 WL 2185542 (M.D. La. 2015) (deGravelles, J.).

[60] *See Garig v. Travis,* 2021 WL 2708910 (M.D. La. 2021) (deGravlles, J.); *see also Mapp v. UMG Recordings, Inc.*, 208 F.Supp.3d 776, n. 13 (M.D. La.2016), *order vacated in part,* 2017 WL 3675419 (M.D. La. May 3, 2017) (deGravlles, J.).

the entity."[61] Paragraph 10(a) of the First Amended Complaint identifies former BRPD Chief

Murphy Paul as a party-defendant, and is sued in his official capacity only.[62] *Kentucky v. Graham*

makes clear that a plaintiff who asserts an "official capacity" claim must allege and establish that

a policy, practice or custom of a municipality was the "moving force" behind the alleged

constitutional violation. But in so doing, Plaintiff's claims to that end are not against the official

him or herself, but rather, are against the municipality.

> Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon v. Holt*, 469 U.S., 464, 471–72 (1985). It is *not* a suit against the official personally, for the real party in interest is the entity.
> \*\*\*
> On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *See, e.g., Monroe v. Pape,* 365 U.S. 167 (1961). More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "'moving force'" behind the deprivation, *Polk County v. Dodson,* 454 U.S. 312, 326 (1981) (*quoting Monell, supra,* 436 U.S., at 694); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. *Monell, supra; Oklahoma City v. Tuttle,* 471 U.S. 808, 817–18, (1985); *id.,* at 827–28, (BRENNAN, J., concurring in judgment). *Graham,* 473 U.S. at 165-66.

In *Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001) the Fifth Circuit upheld the

trial court's dismissal of "the allegations against all of the municipal officers and two of the

employees of the Corps of Engineers in their official capacities, as these allegations duplicate

claims against the respective governmental entities themselves." More recently, the Fifth Circuit

affirmed the dismissal of defendants sued in their official capacities because those claims were

redundant of claims against the Sheriff.[63]

---

[61] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).
[62] Rec. Doc. 7 at 3, ₱10(a).
[63] *Randle v. Tregre*, 147 F.Supp.3d 581, 592–93 (E.D. La. 2015), *aff'd,* 670 Fed. App'x. 285 (5th Cir. 2016).

Here, as the City/Parish and Paul in his official capacity are both named defendants, the claims surrounding City/Parish police policy, employment retention, supervision, training, discipline, and pattern(s) of said claims are duplicative, and should be dismissed as to Paul such that only the entity stands in defense of the claims. Accordingly, Paul in his official capacity is a duplicative and unnecessary party-defendant herein, and should be dismissed with prejudice.

**J.   BRPD is not a juridical entity capable of being sued.**

A juridical person is an entity to which the law attributes personality, such as a corporation or partnership. La. C.C. art. 24.  The analysis created by the Louisiana Supreme Court in *Roberts v. Sewerage & Water Bd. of New Orleans,* 634 So.2d 341 (La. 1994), sets out the framework for determining whether an entity qualifies as a juridical person:

> The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. ***In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity***. (Emphasis added) *Id*. at 346-47 (citations omitted).

In the case of BRPD, the City/Parish's municipal police department, it is clear that the police department is not separate and distinct from the City/Parish, and no organic law grants BRPD the legal capacity to function independently. *See Darby v. Pasadena Police Dep't,* 939 F.2d 311, 313 (5th Cir. 1991). In fact, BRPD is precisely operating as an agency or division of the City/Parish pursuant both to its Home-Rule Charter and its Plan of Government.

Article VI of the 1974 Louisiana Constitution promotes the autonomy of home rule governments by delegating to them broad revocable powers and functions. *Francis v. Morial*, 455 So.2d 1168, 1170 (La. 1984). Section 4 permits each preexisting home rule charter government to

14

retain the powers, functions and duties in effect in its charter when the constitution was adopted, except as inconsistent with the constitution, and to add to its charter any power or function granted by the constitution to other local governments if its charter permits.[64]  Section 5 sets forth procedures by which a home rule charter may be adopted and authorizes a home rule government to assume any power or function necessary, requisite or proper for the management of its affairs, not denied by general law or inconsistent with the constitution.[65] Consequently, a home rule charter government possesses, in affairs of local concern, powers which within its jurisdiction are as broad as that of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter. *Francis*, 455 So.2d. at 1171.

---

[64]*Id*. (*citing* Section 4: Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.)

[65]Section 5:

(A) Subject to and not inconsistent with this constitution, any local governmental subdivision may draft, adopt, or amend a home rule charter in accordance with this Section. The governing authority of a local governmental subdivision may appoint a commission to prepare and propose a charter or an alternate charter, or it may call an election to elect such a commission.

(B) The governing authority shall call an election to elect such a commission when presented with a petition signed by not less than ten percent of the electors or ten thousand electors, whichever is fewer, who live within the boundaries of the affected subdivision, as certified by the registrar of voters.

(C) A home rule charter shall be adopted, amended, or repealed when approved by a majority of the electors voting thereon at an election held for that purpose.

(D) Two or more local governmental subdivisions within the boundaries of one parish may adopt a home rule charter under this Section if approved by a majority of the electors in each affected local governmental subdivision voting thereon in an election held for that purpose. The legislature shall provide by law the method of appointment or election of a commission to prepare and propose a charter consistent with Paragraph (A) of this Section and the method by which the electors may petition for an election consistent with Paragraph (B) of this Section. However, at least one member of the commission shall be elected or appointed from each affected local governmental subdivision.

(E) A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.

(F) Except as prohibited by its charter, a local governmental subdivision adopting a home rule charter under this Section shall have the additional powers and functions granted to local governmental subdivisions by other provisions of this constitution.

(G) No home rule charter or plan of government shall contain any provision affecting a school board or the offices of district attorney, sheriff, assessor, clerk of a district court, or coroner, which is inconsistent with this constitution or law. La. Const. Art. VI, § 5.

15

The City/Parish is organized under a pre-1974 Home Rule Charter, which grants authority as broad as that of the state with regard to local matters, except as limited by the constitution, the charter itself, and the state police power statutes which are applicable to the whole state. *Referencing Fransen v. New Orleans*, 988 So.2d 225 (La. 2008) (*See also Valentine v. Bonneville Ins. Co.,* 691 So.2d 665, 668 (La. 1997) ("It is well settled in the lower courts that a Sheriff's Department is not a legal entity capable of being sued") *citing Ferguson v. Stephens,* 623 So.2d 711 (La. App. 4 Cir. 1993); *Garner v. Avoyelles Sheriff's Dept.,* 511 So.2d 8 (La. App. 3 Cir. 1987); *Jenkins v. Jefferson Parish Sheriff's Office,* 385 So.2d 578 (La. App. 4 Cir. 1980))). The City/Parish's Plan of Government outlines the powers of the Metropolitan Council on behalf of the City/Parish and the limited powers of BRPD and its Chief of Police.[66]

---

[66]*Referencing* Plan of Government Section 2.01, Metropolitan Council Parish of East Baton Rouge and the City of Baton Rouge – Creation and Composition, which states:

The consolidation of the governing body of the City of Baton Rouge and Parish of East Baton Rouge by the creation of Metropolitan Council of the Parish of East Baton Rouge and the City of Baton Rouge (hereinafter sometimes referred to as "Council"), is hereby authorized and directed, said consolidation to become effective January l, l983 (the "l983 Effective Date"). If approved by the qualified voters of the Parish at the Special Election to be called and held on September 11, 1982, in accordance with the Louisiana Election Code; and Section ll.09 hereof, from and of the l983 Effective Date, the Metropolitan Council shall be the governing authority of the City of Baton Rouge and the Parish of East Baton Rouge. All powers, functions and duties vested in the City Council of the City of Baton Rouge and the Parish Council of the Parish of East Baton Rouge, respectively, by (1) this Plan of Government, particularly, but without limitation, Chapter 3 hereof; (2) Article VI, Section 4, of the Louisiana Constitution of 1974 and Section 3A of Article 14 of the Louisiana Constitution of l92l; and (3) the Laws of the State of Louisiana are hereby transferred to and shall be vested in the Metropolitan Council as of the 1983 Effective Date. (Electorate approved September 11, 1982.) Requirements for the adoption of proceedings by the governing authority of the City and Parish after the effective date of the Metropolitan Council shall be as provided for in the Plan of Government. Duties, functions, responsibilities, and status of the officers of the City and Parish and all of the officers, departments, divisions, administrative officers, directors, boards, administrators and commissions of the City of Baton Rouge and/or the Parish of East Baton Rouge and the right to amend the duties, functions and status thereof under the Plan of Government are not altered by the effect of consolidation herein authorized, but to the extent that such right of amendment vests in the City Council of the City of Baton Rouge or in the Parish Council of the Parish of East Baton Rouge, such right shall upon the l983 Effective Date of the consolidation be vested in the Metropolitan Council. Plan of Government Section 2.01(a) (Available publicly at www.brla.gov/1264/Chapter-2-Governing-Bodies).

Section 6.02, Police Department – Organization states,

The Metropolitan Council shall have, except as provided in this Plan of Government, all the powers and duties relating to the organization and activities of a Police Department conferred or imposed on the City of Baton Rouge by its charter and the general laws of the state. The Chief of Police shall be in direct command of the department and, subject to the provisions of Chapter 9 of this Plan of Government, shall have power to appoint and remove all other officers and employees of the department. He shall assign all members of the

As there is no constitutional, state, or local law that designates BRPD as a legal entity capable of being sued or grants it power to act independently from the City/Parish, nothing contradicts the denial of such incapability of BRPD as set forth within the City/Parish's Home Rule Charter and Plan of Government. Accordingly, BRPD is not a legal entity capable of being sued, and should be dismissed from this action with prejudice.

## III. Conclusion

**WHEREFORE,** Defendants, Tafari Beard, Steven Nevels, the City/Parish, and Murphy Paul, respectfully request this Court dismiss, with prejudice, all of Plaintiff's claims against them because to allow them to continue would call into question his criminal conviction and Plaintiff's sworn establishes the invalidity of his claims and this Court's own independent judgment.

Respectfully submitted:

 /s/Kyle P. Kirsch
KYLE P. KIRSCH (#26363)
SAMUEL J. PETERSON (#41895)
NOAH C. ORMOND (#41888)
WANEK KIRSCH LLC
1340 Poydras Street, Suite. 2000
New Orleans, LA 70112
Telephone:     504-324-6493
Facsimile:     504-324-6626
Email:         kkirsch@wanekkirsch.com
               speterson@wanekkirsch.com
               normond@wanekkirsch.com
*Attorneys for Defendant Tafari Beard*

---

department to their respective posts, shifts, details and duties. He shall make rules and regulations consistent with this Plan of Government, the ordinances of the Council, and the laws of the state, concerning the operation of the Police Department, the conduct of its officers and employees, and their equipment, training and discipline, and the penalties to be imposed for infraction of such rules and regulations, which when approved by the Council shall be binding on all members of the department. Plan of Government Section 6.02 (Available publicly at www.brla.gov/1268/Chapter-6-Police-Department).

**RESPECTFULLY SUBMITTED:**
**JOHN S. MCLINDON**
**PARISH ATTORNEY**

**/s/ Michael P. Schillage**
**Michael P. Schillage (#35554)**
**Section Chief of Litigation**
222 St. Louis Street, Suite 902
Baton Rouge, Louisiana 70802
Telephone:    (225) 389-3114
Facsimile:    (225) 389-8736
Email: mschillage@brla.gov
*Attorney for the City of Baton Rouge/Parish of*
*East Baton Rouge*

Respectfully submitted,

/s/ Grant L. Willis
Michael S. Walsh (#08500)
Grant L. Willis, Bar (#34820)
Taylor, Porter, Brooks & Phillips, L.L.P.
450 Laurel Street, 8th Floor, (70801)
P.O. Box 2471
Baton Rouge, LA 70821-2471
Telephone:  (225) 387-3221
Facsimile:  (225) 346-8049
Email: michael.walsh@taylorporter.com
grant.willis@taylorporter.com
Counsel for Defendant, Murphy Paul

Respectfully Submitted:

/s/ Corey L. Pierce
MICHAEL R. D. ADAMS, La. Bar Roll No. 18756
BRANDON J. DeCUIR, La. Bar Roll No: 28014
COREY L. PIERCE, La. Bar Roll No.: 24601
732 North Boulevard
Baton Rouge, Louisiana 70802
Telephone:  225.346.8716
Facsimile:  225.336.1950
Attorney for Steven Nevels

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing Pleading was forwarded to all counsel of record this 8th day of May, 2026, by filing electronically with the Clerk of Court using the CM/ECF system.


    /s/ Kyle P. Kirsch